## Horst Estate

*Metzger & Wickersham,* for exceptants.

*Thomas B. McCarrell, Jr.,* for trustee.

*Frank R. Hean,* guardian ad litem and trustee for unborn issue.

*Sidney E. Friedman,* for petitioner.

RICHARDS, P. J., May 14, 1952.—Jacob Y. Horst died testate on December 19, 1932, his wife having predeceased him. His will created a testamentary trust, his only child Jacob H. Horst being the primary beneficiary. This son, in effect contending that the purpose of the trust has failed and is impossible of fulfillment, presented a petition to terminate the trust. A guardian ad litem was appointed for certain minors and a trustee ad litem for certain unborn and unascertained persons having a possible interest in the trust. A citation was then issued and served upon all interested parties. An answer was filed by the trustee and an answer and

supplemental answer by certain other interested parties. Some testimony was taken and the case duly argued.

After directing the payment of his debts and burial expenses, the will of decedent provided as follows:

"I hereby give, bequeath and devise my entire estate, personal, mixed and real, to the Camp Curtin Trust Company, Harrisburg, Penna., in trust, however, for the following uses and purposes:

"I hereby direct that my real estate shall be held by the said Camp Curtin Trust Company, Trustee, and rented and operated to best advantage, and that One Hundred fifty (150) Dollars of the net income therefrom shall be paid each month to my son, Jacob H. Horst, as long as he lives or during the life of this Trust as hereinafter determined. In event of the death of my said son, Jacob H., during the life and operation of this Trust and in the further event of him being survived by issue, then a like amount, or as much thereof as may, in the sole and uncontrolled judgment of the Trustee, be required, shall be used for the proper care, maintenance and schooling of the issues of my said son, Jacob H. I hereby give the right and authority to my Trustee to use more of the net income of this Trust Fund, if in its sole and uncontrolled judgment it may be needed to meet the expenses which may be incurred through severe or protracted illness, major operations or similar emergencies which may befall my said son or his issue. The remaining net income from this Trust Fund shall be used, as it becomes available, to pay off any liens which are secured by my real estate. This Trust shall continue, and the net income shall be used as above indicated, until all of my real estate shall have been cleared of indebtedness secured by liens against it. When the last of said indebtedness has been paid and if my said son, Jacob H., shall then be living, I hereby direct that this entire

Trust Fund, including the real estate, shall be given to my said son to have and to hold at his own free will. In event my said son should have previously died and be survived by issue, I hereby direct this entire Trust Fund shall be given to his said issue if of mature age, or, if minors, then this Trust shall be continued by the same Trustee and under like stipulations until said issue may arrive at the age of twenty one (21) years at which time it shall be given him, or them, per stirpes, to have and to hold at his, or their, own free will.

"In event neither my son nor his issue are living at the time my real estate shall have been cleared of all indebtedness as above mentioned I hereby direct that the principal and any unexpended net income of this Trust Fund shall be given to my mother, Mary Horst, or her issue."

The other parts of the will are not pertinent to this proceeding.

At the time of his death decedent owned several properties, two of which were lost to the trust estate because they were so heavily encumbered that it was unprofitable to hold them. The trustee received from the executors a small amount of cash. Since 1936, they have also held in the trust the following properties in the City of Harrisburg: 2608 and 2610 N. Sixth Street, both unencumbered; 1801-03 N. Third Street, subject to a $22,000 mortgage which at the date of death had been reduced to $17,000; 302 Kelker Street, adjoining the Third Street properties, and with them constituting an apartment building.

Over the intervening years, the trustee has managed to pay the interest on the mortgage and has reduced the principal thereof to $16,250. This means that in 16 years the principal has been reduced $750 or an average reduction per year of less than $50. During the same period the life tenant has received

$25,650 which is at the average rate of about $134 per month rather than the $150 per month which the will provided. The rest of the income was used for maintenance, insurance taxes and similar purposes. In the meantime, the several properties have deteriorated, needing both normal and major repairs and replacements. Unless something is done, the corpus will be dissipated.

Decedent was a widower at the time his will was written in 1929. Then, as now, his closest relative was his son, an only child. This son was the first object of testator's bounty. The will gives the son an income from the trust and provides that he shall receive the corpus if living when the encumbrances are fully paid. The only purpose in applying some of the income to the payment of the encumbrances was to increase the value of the corpus for distribution. This objective was made the duty of the trustee, not the son. There is no suggestion of a spendthrift trust. There is no distribution of corpus to any person, or class of persons, before the encumbrances are paid. We can see no reason for this provision except the accumulation of income to enhance the corpus. It is seriously to be doubted if this be a lawful reason for the maintenance of a trust. It probably violates the law against accumulations. A case very similar to this is Walter's Estate, 16 Berks 185. There Judge Shaeffer held unlawful the accumulation of stock dividends to reduce a corporate mortgage. This alone might well be held sufficient reason to terminate the trust.

However, aside from this, we are satisfied that because of economic conditions, rent control, inflation, high taxes, and like matters, there is no hope of paying the encumbrances as directed until the remote future. These are conditions which testator did not foresee and which frustrated his plan. At the present rate of

progress, ignoring the need for repairs and replacements, it would require at least 325 more years to pay the balance due on the mortgage. While full opportunity was afforded to all parties to produce evidence, including that of experts, there is nothing to controvert the facts herein stated. The trust officer testified that all avenues of approach were considered and that none held any promise of relief or improvement. Borrowing more money on the properties for improvements but makes the problem worse. Sale of some of the properties to pay the encumbrances not only is contrary to the avowed purpose of the trust, but if done, would entitle the son to the remaining properties which would thus be freed of the encumbrances. Hence, we cannot escape the conclusion that the purpose of the trust, even though it be lawful, has failed, that there is no possibility of its accomplishment, and that the trust should be terminated. We are somewhat strengthened in this conviction by the fact that the secondary contingent beneficiaries, namely the two children of the son who are now sui juris, have assigned their interest to their father. We likewise refer to Kelby Estate, 80 D. & C. 1, decided by Judge Lefever of the Philadelphia Orphans' Court, as a case containing some similar characteristics and issues. There the trust was terminated because the purpose of testator was frustrated.

For these reasons we conclude that the trust should be terminated and the entire trust assets turned over to the son, Jacob H. Horst. Accordingly we enter the following interlocutory

### Decree

And now, to wit, May 14, 1952, the trustee is directed to file a final account. Upon the final approval thereof, we shall enter an appropriate decree terminating the trust.